Case 18-2136 United States v. Lopez-Urbina. You may proceed. Good morning, Your Honors, and may it please the Court, for the Office of the Federal Public Defender, NTS-Hossain. Please raise the microphone so we can hear, or if I can hear. For the Office of the Federal Public Defender, NTS-Hossain, for Mr. Lopez-Urbina. Your Honors, I would request about three minutes for rebuttal time, if you'll permission. So, Mr. Lopez-Urbina pled guilty to an illegal re-entry on August 29th of 2018. He was sentenced to a term of incarceration for 57 months, all basically to visit his daughter to earn some money to help pay for her quinceanera. Now, the District Court erred in failing to apply Application Note 5 of 2L1.2 of the United States Sentencing Guidelines and imposing what essentially amounts to a substantially unreasonable sentence. Now, Mr. Lopez was previously convicted of an illegal re-entry. This was over five years ago from his conviction date, where he received a This sentence imposed by the District Court in the case in front of Your Honors is substantially greater than that. It's nearly almost two and a half years more than the sentence he received five years prior. And so, we're asking this Court to remand for re-sentence because of failure of the District Court to apply Application Note 5. Counsel, excuse me, where I'm concerned is on the issues that you've raised on appeal, the first one being that erred in denying his motion to downward depart or vary. And yet, the trial court clearly agreed that a criminal history of six, I believe, was clearly inappropriate and went down to a criminal history number four. So, Roman number four. So, are you complaining, and this is what was, I couldn't figure, are you complaining that the trial court didn't go to a lower criminal history? No, Your Honor. What we were asking for was for a departure of variance through the application of Note 5 for the offense level. So, the final offense level that was found by the court and by pre-trial, in the pre-sentence interview, was a level of 21. And we were asking for a variance of three levels, which would have gave him a sentence. So, your argument then is strictly based upon the application note. Is that, that you're arguing that the trial court should have varied downward more or departed simply because he didn't apply the application note in this matter? Is that correct? Essentially, yes. The enhancements that are provided for in application Note 5 significantly enhanced Mr. Lopez's sentence. The issue that we raised were that the state recidivist statutes that resulted in the enhancements were not for inherently felonious conduct that he may have engaged in in the course of his life while he was here, but just for the fact of the convictions. So, for instance, the driving while intoxicated convictions, his final conviction from 2011 was simply because he had two prior convictions. So, what would not otherwise be inherently felonious conduct led to a four-level enhancement that led to a higher sentence? It was the same for the domestic violence conviction that he had as well. Well, counsel, the problem I have with that argument is when you look at the totality of this man's history, I mean, the DUIs in Texas versus the DUIs in New Mexico, and the trial court addressed that, but that's just not the only problem with the defendant in this case. He has a bad history. I mean, flaunting the laws, beating people up, I looked at all of that, and I'm thinking, well, okay, I'll hear your argument, but so far I hadn't heard much. Well, what I would say, Judge, is the legal reentry itself is not, I'm not saying it's not a serious crime, but it's not an inherently violent crime, and there are no allegations of any violence or anything directed towards law enforcement here, and he pled guilty. I understand that that's not necessarily consideration in sentencing. I think it does go contrary to the government's argument that he has a violent temper. Two domestic violence convictions, right? Yes, he had the two domestic violence convictions, which I believe he pled I believe so, yes. Well, can we even look at the refusal of the judge to downward depart? I mean, government, I think, argues we don't have jurisdiction to review that discretionary decision. Isn't that right? Well, to extent, yes. The issue that I would raise is the application note 5. So, the record just is unclear on whether the judge was, unclear in my reading of it, of whether the judge, in fact, applied application note 5. The pretrial services, in the pre-sentence interview, mentioned application note 5 and why they decided they did not think that it was appropriate to apply. The defense argued otherwise, and however, the judge in his, in the record in front of your honors, doesn't seem to mention application note 5, rather speaks about his prior criminal history. And to me, it seems unclear that application note 5 was considered, in fact, in the decision based on the argument about pretrial services. It was considered because he was given a reduction from a category 6 to a category 4. I, that would be an application of, I believe it's 4A of the guidelines. That's where pretrial services found, and I'll be particular, 4A1.3b1, that his criminal history category was substantially overstated and that category 6 is meant for the most serious offenders. And so, he addressed that particular issue, the criminal history category for Mr. Lopez. But what he didn't, what I would argue that the district failed to apply was application note 5 and the seriousness of the offense that he is here, that he was there for August 29th. Are you saying that the court did not understand that your argument was that Mr. Lopez Urbina was entitled to an additional reduction because the criminal, because the past felonies were overstated, the severity of the past felonies was overstated? I mean, are you saying that he was, the judge was confused about or didn't address that argument? I wouldn't go so far as to say the judge was confused. I would say that the sentencing guidelines, one of the basic goals is to bring clarity and uniformity to the sentencing. What is unclear is whether he actually did in fact consider application note 5 when he was making his final sentencing determination. So, it's not a question of whether he was confused. I think for me, it was more of a question of whether he considered it at all. Let me ask you a question. So, it seems to me to the extent that the district court denied the request for a departure, you agree that we don't review that? Yes, I would agree that. And that your case is a reasonableness case. And that because the district court didn't apply the application note that his decision to, or his sentence was substantively unreasonable. Right, because procedurally he got there the wrong way. So, everything collapses into the reasonableness argument ultimately. Essentially it does, yes. So, procedurally by not applying application note 5, he substantively reached an unreasonable sentence. Okay, so assume that you're right, and that he misunderstood the way the application note worked, didn't consider it properly, but that there's other evidence in the record that would suggest the sentence was reasonable. What happens to your case then? Honestly, I think the sentence stands. So, if he fails to, so again, the argument would be if he fails to, if he doesn't follow, if he didn't follow the steps to reach a proper sentence, then. Well, counsel, I want to continue along with that line of questioning, because I have the record in front of me, and you might be a great deal of help to me. And I was looking on the last page of the transcript. That's when the I just want to object to the court's failure to find that the application note applies, that my client's criminal history is more, is less serious than the guidelines, than the application guidelines, and that the sentence creates an unwarranted disparity. Now, I've gone back, and what I was looking for, because it's application note number 5, I can't find anywhere during the sentencing where application note 5 is specifically referred to as being an application, because I'm reading this as to what your argument is, that you're entitled to more downward departure in addition from the 6 to the 4 by application note 5. And I'm trying to see where that was brought to the trial court's attention. But even if it was brought to his attention, it still looks like that he considered, you know, indirectly application note 5. So, help me out there. Well, I think the issue was raised, you know, at the sentencing of the seriousness of the prior underlying offenses, which led to the enhancements, and that the attorney of record made those arguments, and the judge ultimately made a finding. What application note 5 says is substantially... Well, I've got application note 5. I know what it says. I'm just trying to see, when was Judge Brack told, we're arguing, counsel, that you need, or court, you need to apply application note 5 for more downward departure? I think it was at the, it would be at the request when the request was made for the downward departure. Okay. Were you counsel before the district court? No. Okay. Because I was listening to what the transcript that Judge Baldock was reading, and at the end of it, he said, we think you need to apply application note 5 to avoid disparity in sentencing, and which smacks of a 3553A factor. And so, I mean, that just brings me back to, aren't we really just talking about whether it's reasonable? Wasn't that, doesn't that sound like your client's counsel before the district court raised that at the hearing in the context of your sentence is unreasonable because he's still overrepresented as far as criminal history? Overrepresented for criminal history, but as far as the offense level and the enhancements that were given, also overrepresented in that context, which wasn't which wasn't mentioned in the, in this sentence here. Right. Oh, I'm sorry. Can I ask him one? Certainly. Are we over time, or is this? No, no, no. He's got 223 left. Yeah, we asked him. Why not? That's why he's here. Now I forgot my question. Maybe. You did. I forgot. If I remember, I'll catch up. You want, I know you wanted some government. May it please the court, Mr. Hussain. Dustin Segovia for the United States. This court should affirm the sentence imposed by the district court. To begin, the court lacks jurisdiction over the district court's discretionary denial of a downward departure under application of five to the legal reentry guideline. Second of all, the district court did not abuse its discretion when it posed a sentence at the low end of the guideline range after it departed by two criminal history categories. On the record before this court, the defendant had an extensive criminal history in the United States, extensive immigration history. And so the 57 month sentence was necessary to fulfill the factors set forth in 3553A. Turning first to the jurisdictional issue. Let me ask you a question before you go there. Do you, so assuming you're right about the judicial or the jurisdictional question, do you agree with me that everything just collapses into a reasonableness argument? That's correct, Your Honor. In the Chavez-Diaz decision, this court said basically that it could not consider discretionary denials of downward departure at step one of the analysis, the procedural reasonableness analysis, but that it could consider the asserted grounds in a departure as part of its reasonableness analysis at step two, the substantive reasonableness stage. I'll turn to that now if there aren't any questions with respect to the jurisdictional issue. This court affords a presumption of reasonableness to sentences within the guideline range. This was a sentence within the guideline range, so it is entitled to that presumption. It was, in addition to that, it was at the low end of the guideline range, and it was at the low end of the guideline range that had been reduced by 20 months after the court departed two levels per criminal history category. The sentence was an eminently reasonable one given the defendant's extensive criminal history in the United States. Within the span of 15 years, he had seven convictions that included three DWIs, two domestic violence convictions, and two immigration convictions. And looking at the where the defendant engages in criminal conduct within the United States, he spends time in jail, he's deported, he comes back, he engages in more criminal conduct that's dangerous and violent, he's caught, he's deported, he comes back and engages in further criminal conduct within the United States, I think the most recent episode is very telling. 2013, he's convicted for legal reentry, the exact same offense he committed in this case. He gets a 21-month sentence, he's deported in November of 2014, less than a year later he's back in the United States, he has yet another domestic violence conviction, he gets two years in jail there, he's deported in October 2017, and then four months later he's back in the United States. That's the conduct that precipitated this case. So that pattern of repeated criminal conduct within the United States and repeatedly ignoring immigration laws made it clear that a 57-month sentence was appropriate and was needed to promote respect for the law. Well counsel, I don't have any problem, that's what led my first questions about the history from category six to four. The trial court clearly took that into consideration and the guys got what's bothering me is the issue on appeal that I see is the application of application note five, because it seems to be indicating that in certain instances, very few, that the trial court can still even go further down. And that smacks of me of what they're trying to argue, or at least what I read from the briefs, that they're arguing that the trial, the reason that it makes it an unreasonable sentence is the trial court didn't even apply application note number five. I mean at most all you're going to do is get it sent back and say, did you not apply it? Well apply it, which we're going to get the same thing. But tell me why application note five is even an issue. I can't find where it was raised except and the final objection made by the trial counsel objects to the failure to make an application note. It doesn't even say five. Your honor, I think, so first of all it was raised in the PSR as a possible grounds for departure. Okay. So it's, it is before the district court. It is your honor, and in the defendant's. Then why didn't he apply it? As I read the transcript your honor, the court did apply it. Okay. Tell me where and how. So at, if the court looks at page 14 of the transcript, the parties are arguing over the recidivism enhancement that the defendant, the defendant's prior convictions received that made them felonies. And the court says, he basically, he says, let's call it what it is. And he says, quote, I don't find it to be disparate to the district court is discussing application note five. And it was raised in a defendant's brief at volume one, page six, it's in the sentencing memo. The parties didn't address it. You know, that's, that's it. That's where it's addressed your honor within the record. And also point out on that point, your honor, the defendant has not raised a procedural reasonableness challenge by saying that the district court didn't adequately address and make findings in that regard. So I would argue that that's to the extent that the court is considering reversing on that basis. Um, well, let me go back to, to judge Carson's question that doesn't this then all come full circle back to being reasonable. That that's correct. Your honor, that is step two of the analysis. The court can consider the assertive grounds for departure in determining whether a sentence is reasonable. Now, in this case, the argument that was made, uh, doesn't even fit within the rubric of application note five. Uh, basically the defendant is, is complaining that he was enhanced, uh, because of felony convictions that were only felonies because of recidivism statutes. But if you look at application five, no, nowhere does application note five contemplate, uh, departing on that basis. It simply says that where an offense level is increased, uh, and the, and the enhancement substantially overstates the seriousness of the conduct underlying the offense, because a sentence doesn't reflect the seriousness of the offense, the court can consider, uh, a departure on those grounds. But the question is not, should these felonies be misdemeanors? That's not what application note five contemplates. So it wasn't even a really a basis for departing on that ground. Even still, the court did not abuse its discretion in, in refusing to consider that as a basis, not refusing, but, uh, rejecting that as a basis for departure. Uh, essentially what that amounts to is a policy disagreement that this court has repeatedly said, and Judge, Judge Timkovich, you were on the panel in Escobar Aguirre in 2010 that said that, uh, while they are not required to consider these arguments, they're, they're entitled to, uh, defer to the policy judgment of the guideline. Uh, the district court in this case did, did consider it and simply rejected, didn't find it, uh, that the circumstances of the case warranted a further departure than had already been granted. Um, and there's nothing, you know, and that the, the record supports that conclusion, you know, other than the defendant's conclusory statements that Texas got it wrong and New Mexico got it right. There's, there's no basis for this court to believe that that's the case. And that's actually contrary to the significant amendments that took place to the legal reentry guideline in 2016, which sought to get away from looking at these specific types of defenses, uh, committed by a defendant. We got away from crime of violence, got away from drug trafficking crime. We started looking at the length of the sentence as indicative of how, uh, harmful that conduct was. So the district court was on firm ground in, uh, rejecting that, that policy argument. Can, um, the district court can look at the recidivism statues from different jurisdictions and, you know, draw some conclusions from, from those about the severity of the crimes. Can it, there's, there's not, there's nothing wrong with a court even accepting Mr. Hussain's methodology and looking at whether, um, you know, there's only a few States that enhance misdemeanors into felonies and using that as a relevant consideration in reducing a sentence. There's nothing substantively unreasonable about a judge doing that. Is there? No, Your Honor. I think that 3553 factors are certainly broad enough to encompass that. Uh, but there's nothing that requires a district judge to, to do that. And even to engage in policy discourse disagreements with the guidelines, they're entitled to just defer to the reasoning of the commission and setting the guidelines that it did. Um, even assuming that the arguments made by Mr. Hussain and below, um, even taking them at face value, the district court was well within its discretion to impose the sentence that it did. It took account for his criminal history when it reduced the category. Um, and given that criminal history, a sentence within the guideline range was imminently reasonable. This court should defer to that, uh, judge's I'm, I'm almost sensing that the defendant wants a double bump here on the, on the severity of his criminal history. And so before the district court, the argument is, Hey, my criminal history is overrepresented because of these recidivism statutes. And the court says, I agree. I'm going to knock you down to two points, which drastically changes the calculation. And then he says, wait for the same reason. Now that you've bumped me down for two, two points, I want you to give me a further level reduction, right? Is that sort of how it went down? That's how I read the record runner. That's by perception as well. And, um, I'm sure the defendant wants as many bumps as he can get downward, uh, in any case. Um, I don't think again, the court, even though the court found that as a whole, looking globally at his criminal category, uh, it thought that it was overrepresented. It was not obligated because of that finding to, to specifically find the application of five warranted further departures. I guess that's my point. The court doesn't just have to keep going down just because you keep pointing to a guideline section that would allow it. Absolutely. Honor this court gives wide discretion to sentencing judges and rendering sentences and appropriately. So they're there in the first instance, they get a sense of the defendant, a sense of the case. Um, they have a lot, a lot more information. They're not reviewing it from a cold record. Uh, this court for that reason, precisely this court should defer to the judge's discretion, um, and from the sentence below, if there are no further questions, I'll yield my time. Thank you, counsel. Mr. Hussein. Okay. Thank you, counsel. We appreciate the concession. Um, we will take a break.